1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   TRAVELERS PROPERTY,                    No. C 10-02757 CRB

12              Plaintiff,                   **ORDER GRANTING IN PART AND**
                                             **DENYING IN PART PLAINTIFF'S**
13        v.                                 **MOTION FOR SUMMARY**
                                             **JUDGMENT**
14   CENTEX HOMES,

15              Defendant.
     _____/

16

17        Plaintiff Travelers Property Casualty Co. filed suit for declaratory and injunctive relief

18   against Defendant Centex Homes regarding its duty to defend Defendant in two construction

19   defect lawsuits.  In its complaint, Plaintiff requested that the Court declare that Plaintiff has

20   the right to control the defense and that Defendant had breached its duty to cooperate under

21   Plaintiff's insurance policies.  It also sought to enjoin Defendant from refusing Plaintiff's

22   appointed counsel's representation of Defendant in the construction defects actions.

23        Plaintiff now brings this Motion for Summary Judgment, or, in the alternative, partial

24   summary judgment, arguing that (1) Defendant breached its duty to cooperate and

25   substantially prejudiced Plaintiff's ability to defend Defendant; (2) Plaintiff is excused from

26   its duties to defend and indemnify Defendant because of this breach; (3) Defendant's

27   payments to its defense counsel after refusing Plaintiff's choice of counsel are voluntary

28

**United States District Court**
For the Northern District of California

payments; and (4) Defendant is barred from suing Plaintiff for failure to completely comply with the policies.  The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for summary judgment.

## I.      BACKGROUND

On February 17, 2009, a different set of homeowners filed a lawsuit for construction defects (the "Allie Action") against Defendant, the general contractor.  Allie v. Centex Homes, No. 34-2009-00034504 (Sacramento Super. Ct.).  On March 20, 2009, various homeowner plaintiffs initiated suit for construction defects (the "Agles Action") against Defendant, the general contractor.  Agles v. Centex Homes, No. 34-2009-00038327 (Sacramento Super. Ct.).  Some of the homes involved in these actions were insured under Defendant's "wrap" policies.[1]  Pursuant to those policies, Defendant tendered to its wrap policy insurance carriers (not Plaintiff) the defense of the Allie and Agles Actions on February 19, 2009 and March 31, 2009, respectively.  Coleman Decl. (Dkt. 113) ¶ 4.

Foremost Superior Marble ("Foremost") and American Woodmark were two of the subcontractors that worked on homes involved in the two lawsuits.  These homes were built in 2003 when Foremost held a policy with Plaintiff that was effective August 1, 2002 through August 1, 2003, Barrera Decl., Ex. 11 (Dkt. 112-2) at 15, and American Woodmark held a policy with Plaintiff that was effective February 8, 2003 through March 1, 2004, id., Ex. 10 at 5.  In mid-May 2009, Defendant tendered its defense to Plaintiffs pursuant to Plaintiff's policies as an additional insured.  Id., Ex. 4 (Dkt. 112-1) at 17-18, Ex. 5 at 20-21, Ex. 6 at 23-24.  For each tender, Defendant stated that the tender only applied to non-wrap homes.  Id. at 17, 20, 23.

Plaintiff acknowledged receipt of the tender requests within a week, but requested multiple times from Defendant additional information concerning the wrap policies, construction contracts for the non-wrap homes, pleadings in the actions, and Defendant's counsel's rates and litigation budget as to all three tenders.  Pragin Decl., Ex. P (Dkt. 88-1) at

---

[1]Wrap insurance covers all parties in a construction project under one umbrella policy.  The wrap policy includes the owner, general contractor, sub-contractors and all other parties involved in the construction project.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

5, Ex. Q at 8-9, Ex. AA at 41-43; Lopez Decl., Ex. D (Dkt. 87-1) at 5, Ex. E at 8.  In August

and September 2009, Plaintiff accepted the tenders subject to a full reservation of rights.  <u>See</u>

<u>generally</u> Barrera Decl., Ex. 10, Ex. 11, Ex. 12.  Plaintiff agreed that the law firm of

Newmeyer & Dillion, retained by Defendant to represent it in both the <u>Agles</u> and <u>Allie</u>

Actions from their inceptions, would continue to defend Defendant in both actions.  <u>Id.</u> (Dkt.

112)[2] ¶ 9.

     In March 2010, Plaintiff informed Defendant that it would retain counsel of Plaintiff's

choosing in both actions.  Plaintiff appointed the law firms of Burch & Cracchiolo in the

<u>Allie</u> Action and Robinson & Wood in the <u>Agles</u> Action.  <u>Id.</u>, Ex. 7 at 26, Ex. 8 at 29, Ex. 9

at 2.  Defendant asserted that it refused to accept Plaintiff's firms as counsel until Plaintiff

would provide information that those firms could provide a conflict-free defense.  <u>Id.</u>, Ex. 1

at 2, Ex. 2 at 7, Ex. 3 at 12.  It also claimed the right to independent counsel pursuant to

California Civil Code § 2860 due to Plaintiff's reservation of rights on several coverage

issues.  <u>Id.</u> at 4-5, 9-10, 14-15.  Defendant later refused both firms' attempts to associate as

defense counsel in both construction defect actions.  Reuben Decl., Ex. II (Dkt. 86-1) at 23,

Ex. JJ at 25.  Defendant never received the information it requested from Plaintiff regarding

the potential for conflict of interest.  Coleman Decl. ¶¶ 7-10.

     On June 23, 2010, Plaintiff filed this suit against Defendant for declaratory and

injunctive relief concerning Plaintiff's role and ability to control Defendant's defense in the

<u>Allie</u> and <u>Agles</u> Actions.  <u>See generally</u> Compl.  After filing suit, Plaintiff stopped paying

any defense fees or costs of Defendant's counsel for the <u>Allie</u> and <u>Agles</u> actions.  Kelley

Decl. (Dkt. 111) ¶ 12.[3]  By October 2010, Defendant incurred $155,238.40 in defense fees

---

[2]Plaintiff objects to paragraphs 2, 5-10, and 12 of the Barrera Declaration on various grounds.
<u>See generally</u> Objections to Barrera Decl. (Dkt. 121).  To the extent the Court relies on this evidence,
it does not adversely impact Plaintiff.  Therefore, it is unnecessary to address Plaintiff's objections to
parts of the Barrera Declaration.

[3]The Kelley Declaration actually states: "Since filing this lawsuit, Centex has not paid
Newmeyer & Dillion anything towards Centex's defense . . . in [both actions]."  The Court assumes that
the Kelley Declaration meant to state that Travelers, not Centex, had not paid.  This is confirmed in
Defendant's opposition, which states: "Travelers has paid none of Centex's defense fees and costs . .
. since the filing of its lawsuit."  Opp'n at 15.

1   and costs in the <u>Agles</u> Action, of which Plaintiff had paid $75,770.84.  Barrera Decl. ¶ 11.

2   For the <u>Allie</u> Action, it incurred $180,620.64, of which Plaintiff had paid $18,431.31.  <u>Id.</u>

3   Newmeyer & Dillion continues to represent Defendant in the pending <u>Allie</u> and <u>Agles</u>

4   Actions.  Coleman Decl. ¶ 10.

5   **II.     LEGAL STANDARD**

6        Summary judgment is appropriate where "the pleadings, depositions, answers to

7   interrogatories and admissions on file, together with the affidavits, if any, show that there is

8   no genuine issue of material fact and that the moving party is entitled to judgment as a matter

9   of law."  Fed. R. Civ. P. 56(c).  The burden is on the moving party to demonstrate that there

10  is no genuine dispute with respect to any material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

11  317, 323 (1986).  A fact is "material" only if it could affect the outcome of the suit under the

12  governing law, and becomes a genuine issue if it can reasonably be resolved in favor of the

13  nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

14       If the moving party does not satisfy its initial burden, the nonmoving party has no

15  obligation to produce anything.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099,

16  1102-03 (9th Cir. 2000).  If, on the other hand, the moving party meets its initial burden of

17  production, then the nonmoving party may not rest upon mere allegations or denials of the

18  adverse party's evidence, but instead must produce admissible evidence that shows there is a

19  genuine issue of material fact for trial.  <u>Id.</u> at 1103.  If the nonmoving party fails to make this

20  showing, the moving party is entitled to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at

21  323.

22       When deciding a summary judgment motion, a court must view the evidence in the

23  light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

24  <u>Anderson</u>, 477 U.S. at 255.

25  **III.    DISCUSSION**

26       Plaintiff moves for summary judgment and argues that Defendant breached its duty to

27  Plaintiff to cooperate in the defense of the <u>Allie</u> and <u>Agles</u> Actions pursuant to the policies.

28  Mot. For Summ. J. (Dkt. 84) at 9-10; Carrillo Decl., Ex. A (Dkt. 89-1) at 59.  Before

**United States District Court**
For the Northern District of California

4

analyzing this alleged breach, however, the Court first analyzes whether Plaintiff fulfilled its

duty to defend Defendant.

### A.      Plaintiff Provided an Immediate, Complete, and Full Defense

Upon an insured's tender of the defense of an underlying action, if any of the claims

are at least potentially covered by the insurance policy, the insurer has a duty to defend.

Buss v. Super. Ct., 16 Cal. 4th 35, 58-59 (1997).  This duty to defend requires that:

> [T]he insurer must defend immediately.  To defend immediately, it must
> defend entirely.  It cannot parse the claims, dividing those that are at least
> potentially covered from those that are not.  To do so would be time
> consuming.  It might also be futile: The "plasticity of modern pleading"
> allows the transformation of claims that are at least potentially covered into
> claims that are not, and vice versa.

> Id. at 49 (citations omitted).

Therefore, although the insurer has no duty under the policy to defend claims that are

not potentially covered, the insurer has a duty imposed by law to defend the entire "mixed"

action.  Hurvitz v. St. Paul Fire & Marine Ins. Co., 109 Cal. App. 4th 918, 935 n.6 (2003).  In

requiring this complete defense, the California Supreme Court sought to avoid the

consequent delay in providing a defense if parties attempted to negotiate a percentage of the

defense costs according to each insurer's potential exposure.  Presley Homes, Inc. v. Am.

States Ins. Co., 90 Cal. App. 4th 571, 576-77 (2001).  After mounting a complete defense, an

insurer can seek contributions from other insurers obligated to defend the insured.  Maryland

Cas. Co. v. Nationwide Mutual Ins. Co., 81 Cal. App. 4th 1082, 1089 (2000).  If an insurer

wants to provide a share of the defense instead of a complete one, it must waive its

reservation of rights to deny coverage and seek reimbursement.  Buss, 16 Cal. 4th at 58.

Failure to provide an immediate and complete defense is a breach of an insurer's duty

to defend and waives its right to control the defense.  Hartford Accident & Indem. Co. v.

Civil Serv. Employees Ins. Co., 33 Cal. App. 3d 26, 35 (1973).  This, in turn, excuses the

insured's performance under the policy, including the duty to cooperate and any restriction

against voluntary payments.  Hamilton v. Maryland Cas. Co., 27 Cal. 4th 718, 728 (2002).

United States District Court
For the Northern District of California

1    Defendant argues that, for two reasons, there is a genuine issue as to whether Plaintiff

2    provided a sufficient defense when it accepted Defendant's tenders.  Opp'n (Dkt. 110) at 15-

3    19.

### 1.    Immediate Defense

5    First, Defendant asserts that Plaintiff failed to provide an immediate defense because

6    it did not accept Defendant's May 2009 tenders, Barrera Decl. ¶¶ 3-4, until August and

7    September 2009, id. ¶¶ 6-8, and it did not appoint counsel until March 2010, id. ¶ 5, almost a

8    year after Defendant's initial tenders to Plaintiff.  Opp'n at 16-17.  This argument fails.  An

9    insurer must reasonably investigate to determine if a duty to defend exists.  Cal. Shoppers

10   Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 38 (1985).  If there was any unreasonable

11   delay in Plaintiff's response to Defendant's tenders, it occurred in part because Defendant

12   failed to promptly provide the reasonable, requested information to facilitate Plaintiff's

13   investigation.  Lopez Decl. (Dkt. 87) ¶ 4.b-d; Pragin Decl. (Dkt. 88) ¶7.b, c, e, g-k.  An

14   immediate defense does not require an insurer to appoint new counsel, but simply requires it

15   to mount and fund a defense.  Buss, 16 Cal. 4th at 46.  Here, Plaintiff agreed to keep

16   Newmeyer & Dillion as defense counsel in the Allie and Agles Actions, so Defendant was

17   not without counsel once Plaintiff accepted the tenders.  Barrera Decl. ¶ 9.  Furthermore,

18   Plaintiff paid defense costs to Newmeyer & Dillion after accepting the tenders, issuing

19   payments upon receiving the firm's bills.  Id. ¶ 11; see, e.g., Lopez Decl., Ex. N at 52.

20   Therefore, Plaintiff provided an immediate defense.

### 2.    Complete Defense

22   Second, Defendant asserts that Plaintiff breached its duty to defend when it did not

23   provide a complete defense.  Opp'n at 17-19.  Instead of defending the entire action, Plaintiff

24   offered to "participate" in the defense and limited its defense obligations to a "proportionate

25   share of any covered indemnity obligation and/or reasonable defense fees and costs . . . less

26   any amounts . . . [for] claims [which] do not fall within the bounds of coverage."  Barrera

27   Decl., Ex. 10 at 12, Ex. 11 at 16, Ex. 12 at 29.  Plaintiff contacted defense counsel to

28

United States District Court
For the Northern District of California

1    negotiate Plaintiff's share of defense fees and costs, and only paid a portion of the defense

2    fees incurred in the <u>Allie</u> and <u>Agles</u> Actions.  <u>Id.</u> ¶¶ 10-11.

3           At first glance, it would appear that Plaintiff breached its duty by seeking to pay only

4    a share of the defense costs.  This is what <u>Presley Homes</u> intended to prevent.  However, an

5    insured is entitled to only one full defense.  <u>San Gabriel Valley Water Co. v. Hartford</u>

6    <u>Accident & Indem. Co.</u>, 82 Cal. App. 4th 1230, 1241 (2000).  An insurer's refusal to defend

7    "is of no consequence to an insured whose representation is provided by another insurer:

8    under such circumstances, 'the insured [is] not faced with an undue financial burden or

9    deprived of the expertise and resources available to insurance carriers in making prompt and

10   competent investigations as to the merits of lawsuits filed against their insureds.'"  <u>Horace</u>

11   <u>Mann Ins. Co. v. Barbara B.</u>, 61 Cal. App. 4th 158, 164 (1998) (quoting <u>Ceresino v. Fire Ins.</u>

12   <u>Exch.</u>, 215 Cal. App. 3d 814, 823 (1989)) (internal quotation marks omitted).

13          However, Defendant itself explicitly limited its tenders of the defenses in the <u>Allie</u> and

14   <u>Agles</u> Actions: "To the extent any home is involved in the lawsuit and falls within the [wrap

15   policies] we are not seeking a defense or indemnity contributions.  This tender is applicable

16   in connection with non-[wrap] homes only."  Barrera Decl., Ex. 4 at 17, Ex. 5 at 20, Ex. 6 at

17   23.  Plaintiff accepted the tenders of the defense to those very same non-wrap homes.  <u>Id.</u>,

18   Ex. 10 at 5-6, Ex. 11 at 15-16, Ex. 12 at 21-22.  Although it accepted the tenders with a full

19   reservation of rights, Plaintiff did not intend anything but a full and complete defense of

20   Defendant.  Myron Decl., Ex. KK (Dkt. 85-1) at 3:7-12, 4:21-25, 8:20-9:12; LL at 14:25-

21   18:8; Myron Suppl. Decl., Ex. OO (Dkt. 120-1) at 12:20-23.  Therefore, to the extent that it

22   limited the scope of such a defense to non-wrap homes, Plaintiff did so in response to the

23   tenders that were themselves limited to non-wrap homes.

24          Defendant cannot claim an incomplete defense on the basis of Plaintiff's attempts to

25   collect information on Defendant's other insurers and to determine its share of defense costs.

26   Not only did Defendant limit its tenders to non-wrap homes, but it tendered its defense to

27   other insurers in the <u>Allie</u> and <u>Agles</u> Actions.  <u>See</u> Coleman Decl. ¶ 4; Lopez Decl., Ex. N at

28   52; Pragin Decl., Ex. U at 20, Ex. V at 23, Ex. W at 27.  Plaintiff attempted to allocate

United States District Court
For the Northern District of California

1  defense fees in the underlying actions to avoid unjustly enriching Defendant and its counsel

2  if multiple insurers paid in excess of 100% of the defense fees.  Plaintiff therefore did not

3  violate its duty to give a complete defense when it sought to allocate defense fees and costs

4  in light of the nature of Defendant's tenders to Plaintiff and the other insurance carriers'

5  acceptance of Defendant's tenders.

6       Defendant also argues that the limited defense reserves set aside under each policy

7  demonstrate Plaintiff's intent to only provide a partial defense.  Kelley Decl., Ex. 10 (Dkt.

8  111-2) at 13-14 ($150,000 for the Allie Action), Ex. 11 at 28 ($50,000 for the Agles Action

9  for American Woodmark), Ex. 12 at 37 ($50,000 for the Agles Action for Foremost).

10  Plaintiff's reserve levels could not possibly cover the litigation budget proposed by

11  Newmeyer & Dillion, which exceeded $1.8 million.  Barrera Decl. ¶ 12.  However,

12  Defendant merely cites to initial reserve levels set before receiving the litigation budget and

13  which were subject to adjustment upon additional information.  Myron Suppl. Decl., Ex. MM

14  at 6:10-12, Ex. NN at 8:3-9:13.  These figures cannot support an inference that Plaintiff had

15  an intent to provide Defendant only a partial defense.[4]

16       In sum, Defendant does not identify a genuine issue of material fact and Plaintiff is

17  entitled to judgment on Defendant's argument that Plaintiff failed to provide a full and

18  complete defense.  Plaintiff did not breach its duty to defend, but in fact provided Defendant

19  an immediate, full, and complete defense in response to its tenders for the Allie and Agles

20  Actions.

21       Having so determined, the Court now turns to whether Defendant breached its duty to

22  cooperate under the policies.

23  //

24  //

25  //

26  //

27

28      [4]Neither party submitted evidence of the current reserve levels or what adjustments Plaintiff made, if any, once Plaintiff received additional information about the lawsuits.

8

**United States District Court**
For the Northern District of California

**B.      Defendant Breached its Duty to Cooperate By Refusing Plaintiff's Appointed Counsel[5]**

### 1.      Right to Control Litigation and Duty to Cooperate

"[I]n the event of a claim, occurrence, or suit, the insured will tender the defense to the insurer, which will provide a defense and control the litigation with the full cooperation of the insured."  Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App. 4th 966, 979 (2000).  The right to control the defense generally includes the right to select defense counsel.  See State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 72 Cal. App. 4th 1422, 1429 (1999).

As discussed above, Plaintiff fulfilled its duty to defend and provided Defendant a defense.  Under the policies, it had the "right and duty to defend [Defendant from] any 'suit' seeking those damages [to which the policies apply]."  Carrillo Decl., Ex. A at 56.  Plaintiff exercised this right to control the defense by retaining law firms for the Allie Action and Agles Action.  Barrera Decl., Ex. 7 at 26, Ex. 8 at 29-30, Ex. 9 at 2.

Upon being provided a defense, the insured has no right to interfere with the insurer's right to control the defense.  Safeco Ins. Co. v. Super. Ct., 71 Cal. App. 4th 782, 787 (1997).  The right to control the defense imposes upon an insured the duty to cooperate with the insurer with regards to its defense.  Truck Ins. Exch., 79 Cal. App. 4th at 979.  Failure to comply with a policy's cooperation clause constitutes breach of the insurance contract.  See Hall v. Travelers Ins. Cos., 15 Cal. App. 3d 304, 308-09 (1971).

Defendant asserts that it did not reject Plaintiff's appointed counsel, but refrained from accepting Plaintiff's appointed counsel because it sought "information so [Defendant] [could] adequately assess [Plaintiff's] offer to appoint separate counsel" and determine if appointed counsel had any conflicts of interest with Defendant.  Barrera Decl., Ex. 1 at 2, Ex. 2 at 7, Ex. 3 at 12.  Plaintiff still has not confirmed whether Plaintiff's counsel for the Allie

---

[5]Plaintiff also argues that Defendant breached its duty to cooperate with its initial refusal to produce the wrap policies to Plaintiff.  Mot. For Summ. J. at 11, 14.  Defendant produced the wrap policies on January 10, 2011.  Kelley Decl. ¶ 11.  Because the Court finds that the Defendant breached its duty to cooperate through its refusal of Plaintiff's counsel, a full analysis of whether Defendant breached through other means is not necessary.

1   and <u>Agles</u> Actions is competent to defend Defendant or has a conflict of interest with

2   Defendant.  Coleman Decl. ¶ 9; <u>see generally</u> Kelley Decl. Ex. 5, Ex. 6.

3          Defendant had a duty to cooperate under the policies.  Carrillo Decl., Ex. A at 59.

4   Instead, Defendant foreclosed Plaintiff's right to select defense counsel by (1) informing

5   Plaintiff that until all outstanding issues were resolved between them, Defendant would

6   maintain control of its defense through Newmeyer & Dillion; (2) objecting to Plaintiff

7   appointing new defense counsel; and (3) not authorizing Plaintiff's appointed counsel to take

8   any action on its behalf.  Barrera Decl., Ex. 1 at 5, Ex. 2 at 10, Ex. 3 at 15.  Furthermore,

9   Defendant rebuffed efforts of Plaintiff's appointed counsel to associate in the cases.  Reuben

10  Decl., Ex. II at 23, Ex. JJ at 25.  Accordingly, Plaintiff has demonstrated that Defendant

11  breached its duty to cooperate by refusing to accept Plaintiff's appointed counsel.

12                    **2.      Substantial Prejudice**

13         For an insurer to be excused from its duties to defend and indemnify after an insured's

14  breach of the cooperation clause, the insurer must show that it suffered substantial prejudice

15  from the insured's breach.  <u>Truck Ins. Exch.</u>, 79 Cal. App. 4th at 976.  Actual prejudice must

16  be shown.  <u>Billington v. Interinsurance Exch. of So. Cal.</u>, 71 Cal. 2d 728, 737 (1969).  The

17  insurer must establish "that if the cooperation clause had not been breached there was a

18  substantial likelihood the trier of fact [in the underlying actions] would have found in the

19  insured's favor."  <u>Id.</u>  Often prejudice is not determinable while an underlying action is

20  pending.  <u>See</u> <u>United Servs. Auto. Ass'n. v. Martin</u>, 120 Cal. App. 3d 963, 966 (1981).  This

21  is because other failure to cooperate cases involve different types of breaches, such as

22  failures to appear for depositions or trial.  <u>See, e.g.</u>, <u>Campbell v. Allstsate Ins. Co.</u>, 60 Cal. 2d

23  303, 306 (1963) (no prejudice to insurer when default judgment entered in car accident

24  against insured who had disappeared because insured admitted to drinking in the police

25  report).

26         However, prejudice may be presumed where it "naturally, inherently and necessarily

27  exist[s]."  <u>Nw. Title Sec. Co. v. Flack</u>, 6 Cal. App. 3d 134, 140-41 (1970) (citing <u>Valladao v.</u>

28  <u>Fireman's Fund Indem. Co.</u>, 13 Cal. 2d 322, 333-34 (1939)).  The California Supreme Court

held that two cases (Valladao, 13 Cal. 2d 322, and Purefoy v. Pac. Auto. Indem. Exch., 5 Cal. 2d 81 (1935)) that presumed prejudice were not contrary to the requirement that an insured's failure to cooperate must substantially prejudice the insurer because "under the facts [in those cases] prejudice was established and . . . a showing of prejudice was not required." Id. at 141 (citing Campbell, 60 Cal. 2d at 306).

In Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest, 168 Fed. Appx. 850, 852 (9th Cir. 2006), the Ninth Circuit held that an insured substantially prejudiced its insurer by failing to turn the defense of a copyright and trademark infringement action over to the insurer's appointed attorneys. It did not analyze whether the trier of fact in the infringement action would likely have found for Cybernet, the insured, had Hartford's counsel had been accepted, but instead concluded that Cybernet's refusal in and of itself substantially prejudiced Hartford. See id. When an insured refuses an insurer's choice of counsel, the insured not only violates the duty to cooperate, but also interferes with the insurer's right to conduct a defense. Id. This breach provides sufficient grounds to deny the insured's claims for defense costs and indemnification. See id.; Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 374-75 (4th Cir. 2005).

Here, prejudice inherently existed when Defendant refused Plaintiff's choice of counsel. Defendant argues that its conduct does not rise to the level of breach to satisfy the substantial prejudice standard. Opp'n at 5-6. However, under these facts, as in Cybernet and Twin City, Defendant's failure to cooperate "could not have been more stark." See Twin City, 433 F.3d at 375. Defendant's breach involved a failure to cooperate and a denial of the Plaintiff's right to defend the underlying actions. Defendant refused to turn over defenses in the Allie and Agles Actions to Plaintiff's appointed counsel, and also prevented those firms from associating into either action. Barrera Decl., Ex. 1 at 2, Ex. 2 at 7, Ex. 3 at 12; Reuben Decl., Ex. II at 23, Ex. JJ at 25. Therefore, Defendant substantially prejudiced Plaintiff, which relieves Plaintiff of its duties to defend and indemnify Defendant in the Allie and Agles Actions.

//

11

United States District Court
For the Northern District of California

### 3.    Conflicts of Interest

Defendant asserts that, nonetheless, Plaintiff cannot appoint counsel, and that Defendant did not breach, because a conflict of interest exists.  An insured is entitled to a conflict-free defense.  James 3 Corp. v. Truck Ins. Exch., 91 Cal. App. 4th 1093, 1101-02 (2001).  If a conflict exists because of an insurer's control over the litigation, an insured is entitled to independent counsel.  Cal. Civ. Code § 2860.  Conflicts must be "significant, not merely theoretical, actual, not merely potential."  Dynamic Concepts, Inc. v. Truck Ins. Exch., 61 Cal. App. 4th 999, 1007 (1998).  Generally, there are four circumstances in which a conflict will require the insurer to pay for independent counsel: (1) "where the insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by the insurer's retained counsel"; (2) where the plaintiff and defendant are both insured by the insurer; (3) where the insurer has filed a lawsuit against the insured; and (4) "where the insurer pursues settlement in excess of policy limits without the insured's consent and leav[es] the insured exposed to claims by third parties."  James 3 Corp., 91 Cal. App. 4th at 1101 (emphasis added).  Defendant alleges two bases for finding a conflict of interest here.  Both are without merit.

#### a.    Multiple Parties Insured By the Same Insurer

First, Defendant asserts that there is a conflict because Plaintiff insures both the plaintiff and defendant in another action.  Opp'n at 19-20.  Defendant has filed cross-complaints against the subcontractors, American Woodmark and Foremost, and Plaintiff insures all three parties.  See Barrera Decl., Ex. 1 at 3, Ex. 2 at 8, Ex. 3 at 13.  Defendant cites O'Morrow v. Borad, 27 Cal. 2d 794, 798 (1946), and Stevens v. Super. Ct., 155 Cal. 148, 150 (1909) to support its claim that this creates a conflict.  However, both cases are distinguishable.  O'Morrow concerned a car accident where the insurer insured truly adverse plaintiffs and defendants, not co-defendants.  27 Cal. 2d at 795.  Stevens was not about insurance coverage at all, but determined the jurisdiction of state courts sitting in probate.  See 155 Cal. at 152.

1    Here, Defendant's cross-complaints against the subcontractors are for indemnification.

2    Defendant's liability to the plaintiffs in the <u>Allie</u> and <u>Agles</u> Actions will be derivative from

3    the liability of the subcontractors who performed the work.  Although Plaintiff insures the

4    Defendant, American Woodmark, and Foremost, it will have the same interest in defending

5    all three entities against plaintiffs' general allegations in both lawsuits.  Defendant's claim

6    that a conflict of interest exists on this basis is "merely theoretical."

7                        **b.       Reservation of Rights**

8    Second, Defendant argues that a conflict of interest arises from Plaintiff's reservations

9    of rights.  Opp'n at 20-22.  A reservation of rights alone does not automatically create a

10   conflict.  <u>Blanchard v. State Farm Fire & Cas. Co.</u>, 2 Cal. App. 4th 345, 350 (1991).  A

11   conflict exists "when an insurer reserves its rights on a given issue <u>and</u> the outcome of that

12   coverage issue can be controlled by counsel . . . retained by the insurer for the defense of the

13   claim."  Cal. Civ. Code § 2860(b) (emphasis added).  However, if the coverage issue is

14   "independent of, or extrinsic to, the issues in the underlying case," then independent counsel

15   is not required.  <u>Dynamic Concepts, Inc.</u>, 61 Cal. App. 4th at 1006.  Where the interests of

16   the insured and insurer are aligned in defending against the underlying action, a conflict does

17   not exist.  <u>Foremost Ins. Co. v. Wilks</u>, 206 Cal. App. 3d 251, 261 (1988).

18   Plaintiff's reservation of rights do not give rise to a conflict of interest.  One of the

19   rights Plaintiff reserved is to deny coverage if the damages alleged occurred outside the

20   policy periods.  Barrera Decl., Ex. 10 at 7, 11, Ex. 11 at 18, Ex. 12 at 22.  Defendant has

21   asserted a statute of limitations affirmative defense in the <u>Allie</u> and <u>Agles</u> Actions and, thus,

22   the issue of when the damages occurred is being litigated in those actions.  Opp'n at 21.

23   Defendant argues against permitting Plaintiff to control Defendant's defense because

24   Plaintiff's counsel will be in a position to focus liability outside the policy periods through

25   manipulation of the pre-trial investigation and presentation at trial.  <u>Id.</u> 21-22.  Defendant

26   also points out that Plaintiff continued its investigation for "proof that there are actual

27   resulting damages in order to stay in the defense."  Kelley Decl., Ex. 10 at 14.

28

**United States District Court**
For the Northern District of California

13

United States District Court
For the Northern District of California

1    Defendant's claim of a conflict of interest due to its statute of limitations affirmative

2    defense fails because the conflict is a "merely potential" one.  Defendant provides no

3    evidence that Plaintiff's appointed counsel could shift the focus of liability outside of

4    Plaintiff's policy periods.  More importantly, whether the damages occurred before, during,

5    or after the policy period is a factual issue outside of counsel's control.  "The reservations of

6    rights related to the timing of [an insured]'s acts [do] not create a conflict of interest entitling

7    [it] to independent counsel."  Citi Apts. Inc. v. Markel Ins. Co., Nos. C 06-5752 CW, C

8    06-7086 CW, 2007 WL 1689013, *5-6 (N.D. Cal. June 11, 2007).  Plaintiff and Defendant

9    have the same interest in minimizing liability by establishing that any damages occurred at a

10   time early enough for the statute of limitations defense to apply in the Allie and Agles

11   Actions.

12   Furthermore, any counsel Plaintiff appoints also has legal and ethical obligations and

13   a fiduciary duty to Defendant.  See Gafcon, Inc. v. Ponsor & Assocs., 98 Cal. App. 4th 1388,

14   1406 (2002).  Defendant's suspicion of an investigation into "actual resulting damages" fails

15   to establish a conflict of interest.  A liability insurer's duty to defend is a continuing one,

16   arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it

17   has been shown that there is no potential for coverage.  Montrose Chem. Corp. v . Super. Ct.,

18   6 Cal. 4th 287, 295 (1993).  Although Plaintiff might have an interest in continuing an

19   investigation into its potential for coverage, this is irrelevant to the ability of Plaintiff's

20   appointed counsel to control the issue of when any covered liability occurs.

21   Defendant fails to present a genuine issue of material fact to support its claim that a

22   conflict of interest exists.  As there is no conflict of interest, Defendant is not entitled to

23   independent counsel and had no grounds to refuse Plaintiff's appointed counsel.

24   **C.    Plaintiff's Other Requests for Relief Exceed the Scope of its Complaint**

25   In addition to moving that the Court find that Defendant breached its duty to

26   cooperate, Plaintiff further asks the Court come to two additional conclusions: that

27   Defendant's refusal to accept Plaintiff's counsel (1) excuses Plaintiff's obligation to pay

28   defense fees and costs under the "no voluntary payments" clause in the policies; and (2)

**United States District Court**
For the Northern District of California

1   contractually bars Defendant from suing Plaintiff on the policies under the full compliance

2   requirement.  Mot. For Summ. J. at 15-18.  Such relief was not pleaded in Plaintiff's

3   complaint.  <u>See</u> Compl. at 12-13.  The two additional requests in the motion are essentially

4   two new claims for relief, not evidence or matter that is referred to when piercing the

5   pleadings.  <u>Compare</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

6   (1986).  It is therefore inappropriate for Plaintiff to move for such relief at this stage.

7          At the motion hearing, Plaintiff argued for the first time that the claims are within the

8   scope of Defendant's counterclaims, Countercl. (Dkt. 37).  But Plaintiff did not present this

9   argument in its papers and Defendant has not had an opportunity to fully address it.  The

10  Court therefore declines to review such grounds at this time and DENIES the motion as to

11  these two claims for relief.

12  **IV.    CONCLUSION**

13         For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

14  Plaintiff's motion for summary judgment.  The Court finds as a matter of law that Defendant

15  breached its failure to cooperate and substantially prejudiced Plaintiff, and Plaintiff is

16  therefore excused from its duties to defend and indemnify Defendant.  The Court declines to

17  review Plaintiff's motion as to the voluntary payments clause and the full compliance

18  condition precedent.

19         **IT IS SO ORDERED.**

20

21     Dated: April 1, 2011                    _____
                                               CHARLES  R. BREYER
22                                             UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28